No. 7047.

STATE EX REL. CARONDELET CANAL AND NAVIGATION COMPANY VS. EDWARD PILSBURY, MAYOR, ET AL.

The act of the Legislature, passed at the extra session of 1877, abolishing the office of Park Commissioners of the New Orleans Park, and transferring all of their powers and duties to the Common Council of New Orleans, did not have the effect of extinguishing by confusion any judgment which said commissioners had obtained against the said city, or of relieving the Common Council from providing for its payment, in the manner pointed out by law.

A judgment creditor of the city of New Orleans who has registered his judgment in accordance with law, is entitled to a mandamus to compel the auditing and disbursing officers of the city respectively to warrant for and pay the same, or so much thereof as there may be a special fund in the city treasury to pay such judgment; and no misapplication of such fund by any, or all of the officers of the corporation, can hinder or defeat the rights of the creditors entitled to be paid out of such fund.

APPEAL from the Sixth District Court, parish of Orleans. *Rightor*, J.

*H. D. Ogden* and *C. G. Ogden* for plaintiff and appellee.

*B. F. Jonas*, city attorney, for defendants and appellants.

The opinion of the court was delivered by

EGAN, J. This is a mandamus suit to compel the erasure from the books of the auditing officer of the city of New Orleans of a judgment in favor of the Commissioners of the New Orleans Park, registered July 1, 1873, in accordance with the provisions of the second section of act No. 5 of the extra session of 1870, and also to compel the payment of a judgment for $12,500 with five per cent interest from February 22, 1864, registered subsequently under the same act.

The defendants except—

First—That the court is without jurisdiction to issue the writ of mandamus to any officer of the city of New Orleans to compel the payment of any sum of money alleged to be due, and that none of the defendants except the Administrator of Finance is charged by law with the duty of paying money, and then only upon the proper warrant as prescribed by law.

Second—That there is no ministerial duty imposed by law upon any of your respondents to pay the alleged judgment of relators in the manner prayed for in the petition.

Should these exceptions be overruled, and not otherwise, respondents answer that there is no money in the treasury, not otherwise appropriated, to pay the judgment of the relators. There was judgment below decreeing and ordering the erasure of the registry of the judgment of the Park Tax Commissioners and the payment of the judgment of the relators. From this the defendants have appealed.

The ground upon which the relators claim the erasure of the judg-

45

ment referred to is that the office of Park Commissioners was abolished by act eighty-seven of the extra session of 1877 and the powers and duties conferred upon them by law were by said act conferred on and transferred to the City Council of New Orleans, to whom all the books, papers, and assets have been transferred, and that therefore the judgment in question has been extinguished by confusion, the city of New Orleans having become by the effect of act eighty-seven creditor as she was formerly debtor of said judgment.

Confusion takes place when the qualities of debtor and creditor are united in the same person. C. C. 2217.

The office of Park Commissioners was created by act eighty-four of the extra session of 1870, which is entitled "An Act to establish a public park for the city of New Orleans, and to provide means therefor." This act provides for the levy and collection by the city of New Orleans of an annual tax of one eighth of one per cent for ten years to carry out the purposes of the act. The park, *its funds*, and all matters connected with its management, establishment, police, and control are all placed by the act under the exclusive management and control of a board of five commissioners, appointed by the Governor for five years. The powers conferred are very full, including the purchase and expropriation of lands, the borrowing of money for the construction of the park, and with that view the issuance of their corporate bonds or promissory notes, and the power to grant mortgages, to secure the same, to sue and be sued, etc. That they did exercise the powers conferred is shown by the fact of their having obtained this judgment against the city, the erasure of which is now sought, and also by the evidence offered by the relators that they had in obedience to act eighty-seven of 1877 turned over their books, papers, etc., to the City Council.

It is not pretended and can not be successfully argued that act eighty-four of 1870 was repealed as a whole by act eighty-seven of 1877. Indeed, the very title and terms of the latter act preclude that idea. C. C. art. 23; 4 R. 77; 3 An. 399. It only abolishes the special park tax, (the annual levy and collection of which for ten years was provided for in the former act), and also the office of Park Commissioners, and in express terms confers "*all the powers and duties*" *of the Commissioners under that act upon* the City Council of New Orleans. It undoes nothing that has been done by the Commissioners, who may for aught that appears in this record have issued their bonds, notes, and mortgages, borrowed money, and purchased or expropriated lands and constructed the park. This very judgment may be the means designed and expected to pay indebtedness so incurred, or at all events may furnish the means of future purchase or construction by the City Council, who are made the new officers or agents to act in lieu and stead, and with all the powers

and duties formerly exercised by the Park Commissioners. It is manifest then that there is good reason why the judgment in question should not be considered extinguished or abolished any more than any other asset or property of or incidental to the City Park. It may be that the act eighty-seven creates the anomaly of imposing apparently inconsistent duties upon the same set of officers already clothed with the power and duty to administer the affairs of the city generally, and that they might not now be able by suit to enforce against the city any of the rights or obligations of the Park Fund, but it by no means follows that they as representing the city are relieved by act eighty-seven of the duty of seeing that this like any other judgment against the city is paid whenever there are funds for the purpose, as is, indeed, specially provided by act eighty-four of the extra session of 1870. The City Council of New Orleans are the officers and agents or rather the agency through which the city acts, but they are by no means the city itself, which is composed of all the inhabitants. We think, then, there is wanting that identity of person as creditor and debtor which is necessary to the extinguishment of the judgment by confusion. One person, the debtor, is the city of New Orleans, and the other person, the creditor, is the ideal, intangible being or thing *the City Park Fund*, even though the City Council be as they are made the trustees or agents at one and the same time of both the debtor and the creditor. No such consequence of extinguishment of that fund can follow from an act which merely deprives it of the sustenance of further taxation and commits its administration to other hands.

As to the first ground of exception: We held in the case of the State at the relation of the same plaintiffs vs. the Mayor and Administrators of New Orleans, 30 An. 129, that " perfect as the right of the relators is under the law to have their registered judgment provided for in the annual budget, there is no means or process by which it can be enforced otherwise than by mandamus." In the State ex rel. Strauss vs. Brown, Administrator, 30 An. 78, the relator proceeded by mandamus to compel the payment of pay-rolls not in judgment and based upon claims accruing in 1876, subsequent to the passage of act No. 5 of 1870, and we held he could not do so. The present case is, however, essentially different. The relators' claims originated long prior to that act. They have resorted to the ordinary action as required by it, and obtained and registered their judgment in accordance with its provisions. The remedy by fieri facias is denied them, and would probably be ineffective any way, the duty of the City Council to budget for their judgment has been already decreed in the former case, and performed as appears by this record, and nothing now remains but the plain ministerial duty on the part of the auditing and disbursing officers, of the city respectively to warrant for and pay the same or so much thereof as there may be money in the

treasury to pay. The evidence discloses the aggregate registry of judgments against the city, including relators', up to February 5, 1875, to be $96,740 32, that of relators being the last. They are required to be paid in the order of their registry. It appears from a statement in the record that payments have been made upon other judgments but none on that of relators. Other statements show collections and disbursements and large amounts appropriated toward current expenses. As, however, we have refused the erasure of the prior registry of the judgment in favor of the Park Tax Commissioners, we are unable to ascertain from the evidence, as it stands, the existence of funds in the treasury to meet relators' judgment. We, however, regard the answer of the defendants that "there is no money in the treasury *not otherwise appropriated*," as evasive and not satisfactory; and we shall remand the cause that a more full, perfect, and satisfactory statement and more full and satisfactory evidence may be made and offered as to what amount of money *has been actually received* into the city treasury on account of the fund applicable by law to the payment of judgments since the date of the registry of that of relators and how the same and every part thereof has been applied. In doing so we will announce that in our opinion the relators who have obeyed the requirements of the first section of act number five of 1870, by resorting to and obtaining judgment "in the ordinary form of action," and registering the same in the proper office, according to section two of the same act, can not be deprived of all remedy to compel the performance of the duties of the City Council, and of those members of it who are charged by law with the custody and disbursement and giving the necessary warrants for the disbursement of the fund provided for their payment. That remedy we think is by mandamus as to all who have plain and imperative duties to perform in the premises. If the writ be directed to several acting in different capacities, but the action of all or of any is necessary for the doing of any thing necessary toward the payment of relators' judgment, each is bound to obey the writ according to the functions or duties assigned to him or the whole collectively, if necessary, as we held in the thirtieth Annual case of the same relators; see Moses on Mandamus, p. 199. High, on Extraordinary Legal Remedies, says: "Mandamus has been fitly termed the spur by which municipal officers are moved to the performance of their duty, and it may be affirmed as a general rule sanctioned by the best authorities that where a plain and imperative duty is specifically imposed by law upon the officers of a municipal corporation so that in its performance they act merely in a ministerial capacity, "the writ is freely granted in all such cases, the ordinary remedies at law being unavailing." Section 324. By article 831, C. P., the writ may sometimes issue even where there are other

means of relief, while this writ is made by the provisions, articles 829 to 844, C. P., inclusive, specially applicable to cases of this kind. As we have already intimated, where all the other requirements of act number five of the extra session of 1870 have been complied with by persons having claims against the city *we can not* so interpret its provisions as to deny the right to mandamus; to do so would, we think, extend its meaning and object to an unwarrantable and unconstitutional extent; and to deny to its creditors, who have resorted to and exhausted the legal remedies pointed out in the act, all remedy against the negligence, unfaithfulness, or inaction of the city officers, or for the enforcement of their rights. This can not be done, and the interest, both of the city and its creditors, requires that it should not be allowed.

High says—continuing the section just quoted—"Where county commissioners are required by a plain and positive statute to set aside a certain portion of county funds annually for a specific purpose, and have refused to perform this duty, they may be compelled to act by mandamus, and so, where under the statutes of a State it is made the imperative duty of town authorities to appropriate and pay over a certain per centage of the taxation of the town for the support of teachers' institutes, the payment may be enforced by mandamus, there being no other adequate remedy by action at law, or otherwise." We regard act number five of 1870 as having been intended to correct the great and very common abuse of resort to the writ of mandamus to enforce against the city summarily, and without opportunity for the ordinary means of contestation, claims of a class for which there exists other and ordinarily adequate remedy by ordinary action, which will afford such opportunity for contest, and that it is but little more than the application of the general rule which High, in section 339 of the same work, says is too firmly established to admit of doubt or controversy; that if there be any other adequate and specific remedy, such as an action at law against the corporation, by which relief may be had by the aggrieved claimant, mandamus will not lie to compel municipal authorities, or their auditing boards, or officers, either to audit or pay claims against the corporation. This rule, he says, is but the application of "a principle underlying the entire jurisdiction by mandamus." In section 344 he says further, however, that "this rule is to be accepted with the qualification that the existing legal remedy shall be adequate to meet the exigencies of the case." In section 351 the same author says: "As regards the mere act of drawing a warrant on the treasurer or other municipal officer charged with payment after a demand has been properly audited and allowed," the case stands upon a different footing "from those where that has not been done, and in such case the amount of indebtedness due from the corporation being definitely fixed by the proper

authority (here by the court), there remains only the ministerial act of drawing the necessary warrant for its payment, and mandamus is the appropriate remedy to compel the performance of that duty." And again, in the same section, " Where money has been raised by taxation for the payment of a specific class of creditors, and is in the hands of the officer entrusted by law with the duty of making payment, the writ will lie; *the remedy by action against the officers being regarded as inadequate*," a remark which may well be applied to the action in damages, against the municipal officers and their sureties, provided by the fourth section of act number five of 1870, before quoted, " where the creditor has been unjustly delayed in the payment of his judgment, or where an unjust preference has been given to other creditors." Indeed, the right to do both or either, we think, can not be questioned. The remedies are cumulative.

No one contends for, and all the authorities forbid, resort to the writ of mandamus where nothing is to be accomplished by it; and it is in general true that if a corporation or officer whose duty it is to pay money has n't it that is sufficient answer to the writ. Moses, however, lays down the rule to be, and we think it is correct, that " if one whose duty it is under the law might have had funds had he not misapplied them, he is as much bound to pay as if he had them." " Therefore, when public moneys are raised by taxation for specific purposes and placed in the hands of the county" (for which we may here read the city) " treasurer, to be paid out on the orders of certain auditing boards, and the treasurer pays out the money for other purposes than those for which the money was raised, he may, notwithstanding, be compelled to pay the order drawn on him to satisfy claims for which the money was raised ; " and he cites a number of authorities in support of this proposition of common sense and common honesty.

As we have already seen that the relators may have equal remedy by mandamus against any or all other officers having duties to perform in connection with the payment of their judgment, we will now say that the same principle may be applied with equal propriety to all other officers whose action is necessary, as to the city treasurer, so far as relates to the performance of the duty assigned to him, or them, and that the misapplication of any specific fund by the act of any or all of the officers of a corporation can not defeat or hinder the rights of those entitled to it. We mean no especial stricture upon the municipal authorities of New Orleans, but the practice has been so common of late of dealing indiscriminately with all classes of funds in the towns, parishes, and cities of the State, without regard to the uses to which they are devoted by law, or the purposes for which they are drawn from the pockets of the tax-payers, that we deem this a fitting occasion to

announce our views of the law on that subject. We think the City Council were properly brought before us in regard to the denied erasure of the registry of the judgment in favor of the Park Commissioners, and we are not prepared now by reason of the character of their answer, and from the evidence in the record to say how far they may be properly before us for the other purposes of the case. We therefore hold that question in reserve for future adjudication, should it become necessary.

For the reasons stated in this opinion, it is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and set aside, that the demand of the relators for the erasure of the registry of the judgment of the Park Commissioners against the city of New Orleans be and it is rejected, and that for the other purposes of this case it is remanded to the court below for the reception of further and fuller answers and evidence as herein before indicated, and to be proceeded with according to law and the principles of this opinion.

It is further ordered that the appellee pay the costs of appeal.